

**FILED**
12/1/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

RONALD T. MOLO

No. 21 CR 698

Judge Robert W. Gettleman

### PLEA AGREEMENT

1.　　This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant RONALD T. MOLO, and his attorney, JOSHUA B. ADAMS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Plea Agreement have agreed upon the following:

### Charges in this Case

2.　　The indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts One through Six).

3.　　Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.　　Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.　　By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the indictment, which charges defendant with wire fraud, in

violation of Title 18, United States Code, Section 1343. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

**Factual Basis**

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

At the relevant time, defendant was a licensed financial advisor, employed in the Joliet branch office of a national financial services firm. Defendant owed a fiduciary duty to clients who entrusted funds to the firm's custody and control for investment purposes. It was part of defendant's duty to maintain and invest client funds for their benefit, not for his own personal gain.

Beginning in or about 2018 and continuing until on or about June 15, 2021, at Joliet, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant devised, intended to devise, and participated in a scheme to defraud and to obtain money from clients by means of materially false and fraudulent pretenses, representations, and promises, as described below.

In connection with his scheme, defendant falsely advised multiple clients that he had a good investment opportunity for them, supposedly involving tax-exempt, interest-bearing bonds or bond funds. In reality, this investment opportunity did not

exist. Defendant led clients to believe that their investments would be income-producing and tax-free, advising them that they would receive regular, periodic interest payments, when in fact, defendant did not intend to invest their funds at all. Instead, defendant intended to misappropriate and convert client funds to his own personal use.

Defendant made materially false and fraudulent representations and promises to induce clients to provide him with money to invest, including that:

a.     their funds would be invested in municipal bonds or bond mutual funds;

b.     the bonds yielded periodic interest at a rate of approximately 5%;

c.     such bonds were exempt from federal and state taxes; and

d.     the investment vehicles for these bonds were affiliated with "Ivory Stone Investment Partners," "Spire Investment Partners," or "Lord Abbett."

Defendant made false representations to his clients verbally, providing no written investment materials, contracts, or any other documentation supporting his claims or protecting his clients' interests. Defendant fraudulently induced clients to sign written authorizations to transfer funds from their accounts at the firm to an outside account, which, unbeknownst to them, was a personal bank account held by defendant and his wife. In soliciting his clients' signatures, defendant used the authorization forms of his employer, thereby giving his clients a false sense of security and confidence that they were making authentic investments sanctioned by the firm.

3

Defendant fraudulently induced clients to transfer funds to his personal bank account in the following amounts on or about the following dates:

| Client | Amount | Date |
|--------|--------|------|
| Victim 1 | $250,000 | January 2, 2019 |
| Victim 2 | $125,000 | May 28, 2019 |
| Victim 2 | $125,000 | August 21, 2019 |
| Victim 2 | $50,000 | April 1, 2020 |
| Victim 3 | $125,000 | April 20, 2020 |
| Victim 3 | $125,000 | November 20, 2020 |

Defendant then converted client funds to his own personal use, without the clients' knowledge or consent, thereby breaching his fiduciary duty to them.

Defendant fraudulently used client funds to pay for at least two vehicles, to pay his home mortgage and the mortgage on his in-laws' home, and to pay credit card bills, home remodeling, construction and design costs, Illinois lottery, travel and shopping expenses, cash, and payments to members of his family, among other personal expenses unrelated to investments for his clients.

Defendant lulled his victim-clients by making token "interest" payments to them, falsely leading them to believe that their money had been invested and was generating interest returns on bonds, when in fact their money had been misappropriated, taken, and spent by him. Defendant periodically made false interest payments to victim-clients between 2019 and 2021, in amounts ranging between about $1,562 and $3,150. Defendant made some of those purported interest payments with cashier's checks drawn on his own bank account, which cashier's

checks he then deposited into the victim-clients' accounts at the firm without truthfully identifying the true source of those funds. Defendant made other purported interest payments to victim-clients by causing checks to be written on their own investment accounts at the firm and sent to them. In either case, defendant paid victim-clients with victim funds, not with any true investment returns, giving them the false impression that these payments constituted interest payments generated from bond investments.

Defendant created false notes in his victim-clients' accounts and account records, and caused false notes to be created, falsely indicating that the source of his deposits into his clients' accounts was interest on investments with "Spire Investment Partners," "Spire Investment Services," "Spire Inv Partners," "SIP," or "Ivorystone Inv Part.," when in fact that was not true.

Defendant eventually stopped making payments altogether and failed to return his victim-clients' money.

Defendant falsely and repeatedly denied misappropriating client funds when questioned by the firm, claiming instead that the victims' money had been placed in legitimate investments at their (the victims') direction, when in fact that was not true.

For the purpose of executing the scheme described above, on or about January 2, 2019, at Joliet, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant knowingly transmitted and caused to be transmitted by means of wire

5

communication in interstate commerce, certain writings, signs, and signals, namely, a funds-transfer in the amount of $250,000 from Victim 1's account at the firm to defendant's personal bank account, through the Fedwire Funds Transfer System.

As a result of defendant's self-dealing and fraudulent acts, the firm and its clients suffered losses in an amount totaling approximately $778,100.

### Maximum Statutory Penalties

7.    Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.    A maximum term of imprisonment of 20 years; a maximum fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a maximum term of supervised release of three years.

b.    Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.    Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pleaded guilty, in addition to any other penalty or restitution imposed by the Court.

### Sentencing Guideline Calculations

8.    Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guideline range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of

6

the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.      For purposes of calculating the Sentencing Guidelines, the parties agree and disagree on the following points:

a.      **Applicable Guidelines.**    The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the November 2021 Guidelines Manual.

b.      **Offense Level Calculations.**

i.      Pursuant to Guideline § 2B1.1(a)(1), the base offense level is 7.

      ii.     The base offense level should be increased by 14 levels pursuant to Guideline § 2B1.1(b)(1)(H) because the amount of the loss (approximately $778,100) is more than $550,000, but not more than $1,500,000.

      iii.     It is the government's position that the offense level should be increased by an additional 4 levels pursuant to Guideline § 2B1.1(b)(20)(A) because the offense involved a violation of securities laws and, at the time of the offense, defendant was a registered broker and an investment adviser. Defendant reserves the right to contest the applicability of this Guideline enhancement.

      iv.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution order that may be imposed in this case, a two-level reduction in the offense level is appropriate.

      v.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant

is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category.** Based on the facts now known to the government, defendant's criminal history points equal zero and his criminal history category is I.

d. **Anticipated Advisory Sentencing Guideline Range.** If the Court adopts the government's Sentencing Guideline calculations as set forth above, then the anticipated offense level total is 22, which, when combined with an anticipated criminal history category of I, results in an anticipated advisory Sentencing Guideline range of 41-51 months of imprisonment, in addition to any term of supervised release, fine, and restitution order the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above Sentencing Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Plea Agreement is not contingent upon the Probation Office's or the Court's concurrence with the above calculations, and

9

defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Plea Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the Court is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     Regarding restitution, defendant acknowledges that the total amount of restitution owed to the victim firm is $778,100, minus any credit for funds repaid

10

prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing.

14.    Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.    Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

17.    After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment.

**Forfeiture**

18.    Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property,

11

real and personal, which constitutes and was derived from proceeds traceable to the offense.

19.     Defendant hereby agrees to the entry of a personal money judgment in the amount of $778,100, which represents the total amount of proceeds traceable to the offense.  Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment he will be ordered to pay.

20.     To the extent that any of the directly forfeitable property is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), defendant acknowledges that the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

21.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.  In this case, however, the United States Attorney's Office will recommend to the Attorney General that any net proceeds derived from any forfeited assets be remitted or restored to eligible victims of the offense pursuant to Title 18, United States Code, Section 981(e), Title 28, Code of Federal Regulations, Part 9, and other applicable law.

22.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

23.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 21 CR 698.

24.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action that the United States may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

13

25.     Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest, or penalties from defendant and his spouse.

### Waiver of Rights

26.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him

14

unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf.  If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.  A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii.     With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b.     **Appellate rights**.  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

27.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above.  Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

28.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Presentence Report and at sentencing shall fully apprise the Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

16

29.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Office.    Defendant understands that providing false or incomplete information, or refusing to provide his financial information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and for enhancement of his sentence for obstruction of justice pursuant to Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of court.

30.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced.    Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

**Other Terms**

31.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

32.    Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i).    In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the IRS), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant and his spouse.  Nothing in this paragraph or the preceding paragraph precludes defendant and his spouse from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

18

33.    Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

34.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

35.    Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Plea Agreement, or defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of such prosecutions.

36. Should the Court refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound to it.

37. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement, to cause defendant to plead guilty.

38. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Plea Agreement.

AGREED THIS DATE: 12/1/22

JASON YONAN
Digitally signed by JASON YONAN
Date: 2022.09.08 13:01:25 -05'00'

Signed by JASON YONAN on behalf of
the United States Attorney

RONALD T. MOLO
Defendant

BRIAN HAVEY
Assistant United States Attorney

JOSHUA B. ADAMS
Attorney for Defendant

20