UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 21 CR 698 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| RONALD T. MOLO | ) | |

**GOVERNMENT'S POSITION PAPER
AS TO SENTENCING FACTORS**

The UNITED STATES OF AMERICA, by MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, submits this memorandum setting forth its position with regard to the applicable Sentencing Guideline calculations and other pertinent sentencing factors.

### I. Introduction

Defendant RONALD T. MOLO was a trusted investment advisor who blatantly stole $800,000 from three long-time clients. While MOLO led his clients to believe that he would invest their money in tax-exempt bonds, he despicably tricked them into signing forms transferring their money to his own personal bank account.

The victims were unsophisticated investors, of retirement age, who trusted MOLO to safely invest their retirement funds for their benefit. MOLO instead took advantage of the trust that had been placed in him—for the personal benefit of himself and his family—wasting the victims' money on a variety of personal expenses, such as paying credit card bills, home mortgage and car payments, home remodeling expenses, travel expenses, payments to family members, and other personal expenses unrelated to investments for his clients' benefit. MOLO tried to hide his theft and

misuse of client funds by making a few token "interest" payments to them—paying them not with interest generated from any investment, but with their own money that he had stolen from them—until his scheme was uncovered by his employer (Edward D. Jones & Co.).

Fortunately for the victim-clients, Edward Jones has fully reimbursed them, and it now stands in their shoes for purposes of restitution. Edward Jones, on the other hand, may not be as fortunate. It is unlikely that Edward Jones will be fully repaid because MOLO squandered virtually all the money that he stole from the victims, and he is not currently working or showing any remorse for his offense.

For these reasons and others summarized below, the government respectfully recommends that the Court impose a sentence which includes a term of imprisonment within the Sentencing Guideline range.

## II. Sentencing Factors

As a matter of procedure, a sentencing judge must correctly calculate the Sentencing Guideline range, treat the Guidelines as advisory, consider the applicable § 3553(a) factors, select a sentence supported by the facts presented, and then adequately explain the selected sentence, including any variance or departure from the range. *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Annoreno*, 713 F.3d 352, 357 (7th Cir. 2013).

"[A] major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50. "[T]he farther down the judge goes the more

2

important it is that he give cogent reasons for rejecting the thinking of the Sentencing Commission." *United States v. Smith*, 811 F.3d 907, 910 (7th Cir. 2016).

## A.  *Sentencing Guideline Calculations*

### 1.  **Offense Level (22)**

Pursuant to Guideline § 2B1.1(a)(1), the base offense level is 7. The base offense level should be increased by 14 levels pursuant to Guideline § 2B1.1(b)(1)(H) because the amount of the loss is more than $550,000, but not more than $1,500,000.

The offense level should be increased by an additional 4 levels pursuant to Guideline § 2B1.1(b)(20)(A) because the offense involved a violation of securities laws and, at the time of the offense, MOLO was a registered broker and investment adviser.

Applying an agreed three-level reduction for acceptance of responsibility results in an offense level total of 22.

### 2.  **Criminal History Category (I)**

MOLO has no criminal history. Therefore, he is in criminal history category I.

### 3.  **Advisory Guideline Range (41-51 months)**

Combining a criminal history category of I with an offense level of 22 results in an advisory Sentencing Guideline range of 41-51 months of imprisonment.

## B.  *Other Relevant § 3553 Factors*

Aside from the Sentencing Guidelines, courts are obligated to consider the following additional sentencing factors, among others:

3

- the nature and circumstances of the offense (18 U.S.C. § 3553(a)(1));

- the history and characteristics of the defendant (*id.*); and

- the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner (*id.* § 3553(a)(2)).

1. **Nature and Circumstances of the Offense**

MOLO stole hundreds of thousands of dollars from three senior clients who had placed their complete trust and faith in him. They trusted MOLO not only because he served as their financial advisor, but also because he was an advisor to their parents going back many years. At least one of the victims additionally considered MOLO as a personal friend, expressing disbelief at how MOLO could have exploited their friendship to steal from him:

> It turns my stomach to think that I instilled so much trust in someone who knowingly took my wife's deceased father's inheritance without batting an eye. I told my family to go to Mr. Molo if anything were to happen to me. I thought Mr. Molo would help my family, however, all he did was steal our funds for his personal gains and lifestyle.

*Victim Impact Statement of* ▇, at 2.[1] One of MOLO's former ▇ has expressed her own grief over how "Ron preyed on them [the victims], knowing full well that they did not understand what he was explaining to them. He had gained

---

[1] The Probation Officer has filed a Supplemental Report (Mar. 10, 2023), to which the victim impact statement of ▇ is attached, along with statements of two of MOLO's former ▇

4

their trust over the years and used it against them to coerce them into giving him their money." *Victim Impact Statement of* ▓, at 1.

It is unknown why MOLO chose to steal from these particular long-time clients, who were either in retirement or approaching retirement, and who trusted him. ▓'s belief is that MOLO was motivated by nothing other than money:

> Ron is not the type of person who has empathy for others. He didn't care that he took advantage of seniors or treated his employees unfairly. Ron cared about one thing: spending money. … Ron loved to brag about all those things he was buying. I think he thought he was impressing people. He tried to literally 'keep up with the Joneses', trying to compete with other successful advisors in our area. Which if I had to guess, is what led him to steal money in the first place.

*Id.* at 2.

Whatever MOLO's underlying motivation may have been, one thing is certain: he selfishly took care of himself and used the victims' money for his own purposes, that is, to pay his own personal expenses—including the mortgage on his own home and the home of his mother- and father-in-law, and to pay for other needless things such as home improvements, shopping, and thousands of dollars on lottery tickets, among other things—without a care about the wishes and needs of his clients.

MOLO managed to keep his scheme going for more than two years by deceiving the victims with occasional "interest" payments (payments made with their own stolen money), until he began missing payments to them. When one of the victims inquired about a missed payment and MOLO was confronted about it by his

employer, MOLO would not acknowledge any wrongdoing or express any remorse. Instead, he tried to shift responsibility to the victims.

MOLO blatantly lied to his employer, clinging to a provably false claim that his clients had suggested the (non-existent) bond investments to him, despite their statements to the contrary, and that he had invested their money according to their instructions, despite being unable to produce any evidence of the supposed bond investments. MOLO would subsequently lie to the FBI case agent (who traveled to his residence in an attempt to get his version of the events), falsely denying that client funds had gone into his bank account, when in fact his bank records demonstrated otherwise. The agent served MOLO with a subpoena for any records supporting the alleged investments that he had made on behalf of his clients, but MOLO basically ignored the subpoena; he never responded to it.

Only after MOLO was indicted did he begin the process of acknowledging his wrongdoing, self-surrendering in Florida after being advised that a bench warrant had been issued for his arrest, and later entering a guilty plea. He remains unemployed, with no stated or realistic plan for paying restitution.

Aside from the financial losses resulting directly from MOLO's theft of client funds, his crime has left a lasting impact on the office where he worked for many years and on the employees who worked for him. As one of MOLO's former ▓▓▓▓▓ ▓▓▓▓▓ has explained:

> Because we knew all of our ▓▓▓▓▓ my ▓▓▓▓▓ and I were given the task of calling each of them and telling them that Ron no longer worked for Edward

6

> Jones. This put an incredible amount of pressure on us. … We had ▇▇▇ yelling at us and some who transferred their accounts out of ▇▇▇ which affected ▇▇▇ financially. We heard fellow ▇▇▇ questioning whether we knew what he had done, and that felt like it had compromised our integrity. This was a huge embarrassment to me, and I felt I had to explain myself and the situation to others, which wasn't fair. … Ron put us in this position because of his selfishness and greed.
>
> …
>
> It's well over a year later since this happened, and the ▇▇▇ and I are still feeling the effects of his actions. The one ▇▇▇ who thought Ron was his friend is still having difficulty moving forward. Every time we talk, he tells me how angry he still is. Another victim sadly passed away during all of this. The last year of his life he had to deal with the stress of being scammed. The third ▇▇▇ was so duped by Ron, that it took her months to even realize and accept what he had done. He preyed on their inexperience and manipulated them into a deal that was too good to be true. Again, he knew exactly what he was doing.

*Id.* at 1-2.

### 2. History and Characteristics of the Defendant

MOLO is a college-educated, experienced financial advisor, having worked for a reputable investment firm (Edward Jones) for about twenty years. *PSR*, at 13 ¶ 71. Prior to his criminal offense, MOLO was registered with the Financial Industry Regulatory Authority (FINRA) as a broker and investment adviser, though he since has been barred. *See* https://brokercheck.finra.org/individual/summary/4371241.

Now 63 years old, MOLO was in his late 50s/early 60s at the time of the offense. It is not obvious why MOLO began stealing from clients this late in his career. This should have been a time when MOLO was enjoying his peak earning potential. For an experienced, licensed white-collar professional such as MOLO, there was no reason to steal from clients.

7

Edward Jones adequately compensated MOLO with a six-figure annual salary. *PSR*, at 13 ¶71. MOLO's earnings helped provide for a comfortable home in the suburbs, where he currently resides with his wife, and other aspects of a normal life, such as traveling. *Id.* at 10, 12, 16 ¶¶45, 60, 80. MOLO did not need to steal money to support himself or his family. His children are adults who do not appear to be dependent on MOLO for financial support. *Id.* at 10 ¶47. In short, there is no remotely defensible motive for MOLO's financial crime.

Neither of MOLO's former ▇▇▇▇ speak highly of his character. Each of them has described MOLO as an inveterate liar. *See Victim Impact Statement of* ▇▇, at 1 ("He is a liar. The other ▇▇▇▇▇▇ and I would catch him in lies constantly, but he could never, ever admit that he was wrong"); *Victim Impact Statement of* ▇, at 2 ("Consider his character in that he is a pathological liar, and truly thinks he will not have to face any consequences for his actions"). ▇ further commented that MOLO spoke poorly of friends, colleagues, and family alike, concluding that "[h]e had no interest in anyone other than himself." *Victim Impact Statement of* ▇, at 1.

### 3. Respect for the Law/Deterrence

Any sentence imposed by the Court should not only reflect the nature and seriousness of the offense, and the background and characteristics of the defendant, the sentence also must be sufficient, "but not greater than necessary," to promote respect for the law, to provide just punishment for the offense, to afford adequate

8

deterrence, and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2).

"As the legislative history of the adoption of § 3553 demonstrates, Congress viewed deterrence as 'particularly important in the area of white collar crime.'" *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting S. Rep. No. 98-225, at 76 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3259); *see also United States v. Musgrave*, 761 F.3d 602, 609 (6th Cir. 2014) ("[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence") (internal quotation marks omitted); *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018) ("endors[ing] the idea that white-collar criminals act rationally, calculating and comparing the risks and the rewards before deciding whether to engage in criminal activity. They are, therefore, prime candidates for general deterrence") (internal quotation marks and citation omitted); *United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("[c]onsiderations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it").

While deterrence is undoubtedly important to a white-collar case such as this, a meaningful sentence also is necessary to promote respect for the law. Up to this point in time, MOLO has not demonstrated any sincere level of remorse or intent to

9

make things right in the future. MOLO has not worked since his termination by Edward Jones. Instead, while under criminal investigation, and knowing that he owed substantial sums of money to his victims, MOLO took a trip to Florida, before surrendering to authorities.

Despite his acknowledgment of guilt in court, MOLO apparently is expressing little remorse or guilt outside of court. One of MOLO's victims has described his apparent lack of remorse:

> Over this past year Mr. Molo has shown no remorse for his conduct. He continually denies his participation and his implementation of this fraud. He tells people that he was wrongly terminated by Edward Jones.
>
> … While he is someone who has no previous record, this is someone who should not be given a light sentence. … Mr. Molo invited my family into his home and we invited him into ours. If Mr. Molo can do this to someone who he was friends with for 14 years, it is unimaginable what he can do to someone who he does not have a relationship with.
>
> … More importantly, it is more than money that Mr. Molo has taken from my family and I. He has taken our trust and has caused unnecessary stress and grief.

*Victim Impact Statement of* ▮, at 2-3. That victim's comments have been echoed by MOLO's former ▮ *See Victim Impact Statement of* ▮, at 2 ("One of the hardest things for me to accept is the fact that in the time that this has happened, he is still out there living his life like nothing happened. Like he didn't do this crime. … He's telling people he won't go to jail for this"); *Victim Impact Statement of* ▮, at 1-2 ("I felt guilty, like I should've done a better job to help protect the ▮. … Ron just went home and went about his life. … He was still telling others that what

was happening to him was wrong; that he was just selling out of the company, which wasn't illegal").

### III.  The Government's Recommendation

#### A.  *Term of Imprisonment*

As discussed above, MOLO's criminal offense involved a large sum of money brazenly taken from ordinary people who had trusted him to preserve and grow their retirement capital, not to fund his own lifestyle.  MOLO did not commit this crime out of financial need or without thought and planning.  He planned to steal from three different people, and he carried out that crime over an extended period of time.  Even after getting caught, MOLO continued lying—to his employer, to the FBI, and apparently to the community as well (according to the various victim impact statements that have been submitted).  MOLO has expressed no remorse or taken any steps (such as working or liquidating existing assets) to try to right his wrong and make his victims whole.

At this point, it is difficult to see any mitigating circumstances of the sort that might call out for a departure below the applicable Sentencing Guideline range.  A sentence within the Guideline range, on the other hand, would more closely reflect the seriousness of the offense, promote respect for the law, and afford deterrence to other dishonest financial professionals who may be motivated to steal from clients in the future.

B. *Supervised Release*

Any term of imprisonment imposed in this case should be followed by a period of supervised release. The government recommends that the Court impose the maximum period of supervised release, three years, to provide the maximum opportunity to supervise MOLO's efforts to pay restitution.

The government has no objection to any of the conditions of supervised release recommended by the Probation Officer. *See PSR*, at 17-22.

C. *Restitution*

The sentence imposed by the Court also should include an order of restitution, requiring MOLO to pay restitution to Edward Jones, which, admirably, has reimbursed each of the individual victims for their losses. The government has calculated a net restitution balance of $710,308, which MOLO should be ordered to pay to Edward Jones.

## IV. Conclusion

In sum, the government respectfully recommends that the Court impose a sentence which includes the following terms:

**1.** a term of imprisonment within the Sentencing Guideline range;

**2.** a three-year term of supervised release to follow any term of imprisonment imposed by the Court; and

**3.** an order of restitution, obligating MOLO to pay $710,308 to Edward Jones.

Upon the Court's imposition of sentence on Count One of the indictment (the count to which MOLO has pleaded guilty), the government moves to dismiss the remaining counts of the indictment, namely, Counts Two through Six.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: */s/Brian R. Havey*
BRIAN R. HAVEY
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 469-6305
brian.havey@usdoj.gov