IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 21 CR 698 |
| | ) | The Hon. Judge Gettleman |
| RONALD MOLO, | ) | |
|     Defendant. | ) | |

### RONALD MOLO'S SENTENCING MEMORANDUM

NOW COMES, RONALD MOLO, through his attorney, JOSHUA B. ADAMS, and respectfully requests, pursuant to 18 U.S.C. § 3553(a), and *United States v. Booker*, 543 U.S. 220 (2005) and its progeny, find Mr. Molo's Total Offense Level at 20, with a Criminal History I, and an advisory guideline range between 33-41 months imprisonment. Mr. Molo requests this Honorable Court impose a sentence of 24 months' probation. Such sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a). In support of this request, Mr. Molo states the following.

**I.      SENTENCING REQUEST**

Ronald Molo spent his entire life building his family, his profession, and his reputation. Sadly, he has put all three in jeopardy. He tarnished his good name in the community and risks a term of incarceration separated

1

from his family. He is truly ashamed, embarrassed and remorseful for his conduct in this case. The only silver lining in this case is that the victims have been fully reimbursed for Mr. Molo's fraud. Edward Jones paid each victim in full and thankfully they are not put in a financially difficult situation.

This is Mr. Molo's only interaction with the criminal justice system. He pled guilty and agreed to hand over funds held in his Edward Jones account to repay a portion of the restitution he owes. Ron is truly remorseful for his conduct that has affected so many people. Ultimately, Mr. Molo argues that a sentence of probation is sufficient, but not greater than necessary to achieve the sentencing goals of §3553(a).

## II. Mr. Molo is entitled to a 2-point reduction pursuant to §4C1.1

In its amendments for the November 2023 Guidelines, the Sentencing Commission recommends that individuals with no criminal history receive an additional 2-point reduction in their total offense level calculation. *See* https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf, at p. 79 (last visited 5/9/2023). The Commission found that individuals with zero criminal history points have considerably lower recidivisms rates than individuals with 1 criminal history point. *Id.*

Mr. Molo has zero criminal history points. PSI., ¶37. As such, he

qualifies for the 2-point reduction that will apply to all defendants in six months.

## III. A SENTENCE OF 24-MONTHS PROBATION BEST ACCOMPLISHES THE GOALS OF 18 U.S.C. § 3553(a)

This Honorable Court must impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2), " which are "the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3553(a)(2). In "determining the particular sentence to be imposed," the Court must consider these purposes, the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1)-(7).

### a. Nature and Circumstances of the offense

There is no dispute this is a serious offense. Mr. Molo betrayed the trust of clients that he spent decades cultivating. He used the money for personal expenses and material gain. However, this is a unique case. Fortunately, the victims in the case have been made whole. This is not a

3

situation where the victims are left destitute, cleaned out of their life savings. The victims here are lucky that Edward Jones is a large enough brokerage that they were made whole.

Mr. Molo wants to make one point abundantly clear. This in no way excuses his conduct or argues that the victims were not harmed. He acknowledges the deep psychological harm he caused as a result of his deceit. However, the fact that these individuals were reimbursed is a unique factor. Edward Jones still remains a victim. Someone had to repay the investors for Mr. Molo's conduct.[1] Mr. Molo still must repay Edward Jones, and he will not profit in any way from his crimes.

### b. Ron's History and Characteristics

Ron Molo grew up in the Chicagoland suburbs in a loving family. His needs were met and he spent time involved in his church. PSI., ¶44. To this day, Ron has been dedicated to service in his community. PSI., ¶48. He is active in his church, the Rotary Club and Crime Stoppers. Moreover, he raised three successful children who are independent and starting their own lives. ¶47. Ron's children and wife remain devoted and supportive of him during this very difficult time.

---

[1] Mr. Molo did not consider that Edward Jones would reimburse his clients for his fraudulent activity at the time these events occurred. This is merely a fact that takes this case out of the common investor fraud cases.

4

While Ron's conduct occurred over the course of several months, this is truly aberrant conduct. Ron does not want this one very tragic part of his life to define who he is as a person. He still is the same husband, father and friend. He feels tremendous shame, remorse, and embarrassment as a result of his conduct.

>  c. **The need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.**

The need for retribution is measured by the degree of "blameworthiness," which" is generally assessed according to two kinds of elements: the nature and seriousness of the harm caused or threatened by the crime; and the offender's degree of culpability in committing the crime, in particular, his degree of intent (mens rea), motives, role in the offense, and mental illness or other diminished capacity."[2]

The sentencing statute requires that the sentence imposed must be no greater than necessary to serve the punitive purpose of sentencing. For several decades now, the response to this directive has been "the longer, the better." Incarceration rates in the United States are "now almost five times higher than the historical norm prevailing throughout most of the twentieth

---

[2] Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?*, 89 MINN. L. REV. 571, 590 (February 2005).

century, and they are three to five times higher than in other Western democracies."[3]

Understandably, the sentence in this case must adequately deter Mr. Molo from committing crimes again in the future. The biggest deterrence in this case, however, is not imprisonment. Mr. Molo incurred a significant restitution amount as a result of his conduct. He must work to repay Edward Jones, something he cannot do in a prison cell. Permitting Mr. Molo to remain on probation, with strict repayment schedules and a requirement that he remain employed best protects the public but serves as adequate deterrence as well.

With respect to specific deterrence, "the available evidence points toward a null or a slightly criminogenic effect of imprisonment but has rarely found support for a clear specific deterrent effect."[4] For example, among individuals whose first felony led to imprisonment, recidivism was lower when, in response to a second felony, they were sentenced to less severe sanctions . . . regular and intensive probation typically were associated with

---

[3] Todd R. Clear & James Austin, *Reducing Mass Incarceration: Implications of the Iron Law of Prison Populations,* HARV. LAW & POLICY REV. 307 (Summer 2009) (footnotes and citations omitted).
[4] Ellen Raaijmakers et al., *Exploring the Relationship Between Subjectively Experienced Severity of Imprisonment and Recidivism: A Neglected Element in Testing Deterrence Theory*, 54 J. of Research in Crime and Delinquency 1, 4 (2017).

lower rates of recidivism.'"[5]

With respect to the risk of recidivism for individuals released from custody and on supervised release, social scientists have identified several factors that help insulate recently released individuals from re-arrest or from revocation of their supervised release. These factors include having strong social support, having employment, and feeling motivated to make a change. William Rhodes, *et. al. Recidivism of Offenders on Federal Community Supervision* (Jan, 2013) at 17[6].

Because Ron is a convicted felon, he will never again be allowed to work in the investment sector. Therefore, the risk that he would have the opportunity to commit this crime, or a similar one, in the future is zero. He will never again be in a position to have authority or control over an investor's money or make financial decisions on behalf of another. This too is a strong mitigating factor in favor of probation. Mr. Molo is not a repeat offender. This is his only case in the criminal justice system. A sentence of probation will have the same deterrent effect as a sentence of incarceration.

---

[5] Daniel Mears & Joshua Cochran, *Progressively Tougher Sanctioning and Recidivism: Assessing the Effects of Different Types of Sanctions*, J. of Research in Crime & Delinquency 24, 33 (2017).

[6] *Available at:* https://www.ncjrs.gov/pdffiles1/bjs/grants/241018.pdf (last visited February 9, 2023)

## IV. CONCLUSION

For the foregoing reasons, Ronald Molo respectfully submits that a sentence of 24-months' probation, followed by three years of supervised release is sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

Respectfully Submitted,

s/Joshua B. Adams
Joshua B. Adams
Counsel for Ronald Molo

Joshua B. Adams
LAW OFFICES OF JOSHUA B. ADAMS, P.C.
900 W. Jackson Blvd, Suite 7E
Chicago, IL 60607
(312)566-917